Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division. The Honorable Justice Mary Mikva presiding. Case number 2-0-0331. Andre Katz versus Michael Hartz. Thank you. Welcome, Counsel. Before we start, before I start your timers, I'm going to ask you each to tell us your names and who you're representing. Sure. Starting with the appellant, please. My name is Michael Sheba. I represent Andre Katz, who both in an individual capacity and as the guardian for Alice Newman. And I'm the plaintiff and the appellant. Thank you. And who else do we have? Good afternoon, Your Honor. Timothy Patnode on behalf of the defendants, Michael Hartz, Elizabeth Creasy, and Kat Muchen-Roseman. If I could ask one consideration, I seem to be logged in twice. I'd like to be able to back one of those out if I could. Darren, can you help Mr. Patnode? I'll eliminate the other one. Thank you. All right. Before we start, you'll each have 20 minutes aside. Mr. Sheba, would you like to reserve some of that for rebuttal? I would like to do that, please. Yes. How much? I'd like to reserve, let's say, eight minutes rebuttal. Okay. All right. Then whenever you're done, zoom arguments. We'll try to stop and let you finish, and you stop and let us finish, and we'll just try to work it through. Sounds good. But there will be questions. Thank you. Sounds good, Judge. Okay. So this case comes down to, the crux of this case is when the statute of limitations starts running against a person who is in guardianship. And we have two arguments as to why it shouldn't have run against our person. The first is, and this is one of the sub-issues, is whether knowledge of any wrongdoing at all is enough to trigger the statute of limitations when you have a separate wrongdoing completely divorced from the initial one, whether you need knowledge that the defendant had any wrongdoing or not, or just that wrongdoing was done. And with the first argument, what happened in this case was that our client, sorry, yeah, our client, Alice Newman, went to seek, went with her son to, went with her son to get her will revised when they did that with Catton. When Catton took her in, they didn't verify that she had the mental capacity to change her will. As a result, Leonard, the brother that isn't involved in this litigation, was able to change her will in a way to benefit himself when his mother didn't have the capacity to do so. Our client then moved for guardianship over his mother. And in the discovery process, that was the first time he learned that Catton didn't perform the necessary tests they should have to see whether or not Alice had capacity in the first place. And this, and herein lies the disagreement we have in the first argument. I argue that because we had no idea that Catton had failed to perform this completely separate duty, which is perform this test, we couldn't have sued him back in early June when we sought guardianship and to reform the improper will. I'm going to stop you for a second, Consul. They didn't perform the duty, but most of us go to see lawyers all the time and nobody does a competency test. So it's not simply their failure to perform the duty, there has to be some reason that they should have done that competency test. And the question is whether he had enough notice that they were on notice that they should have and that they in fact didn't, right? It's a little more nuanced than that they didn't do a competency test because he had no reason to Well, am I missing something? No, I think that opposing counsel absolutely could have made the argument when they moved to dismiss that no competency test was required. That hasn't been briefed at all. Here all we're talking about is assuming a competency test was required, right? Whether my client had noticed that they didn't do it prior to becoming, prior to becoming guardian and being able to go through discovery and have all the tools because obviously You're not understanding me. Why in the world would he have thought that they would have done a competency test? Why you're, you're saying he was acting on the assumption that they did a competency test. Is that what you're saying? No, I'm saying my client didn't know that they didn't perform a competency test and may not have been aware. I, you know, I haven't asked whether or not he was aware they needed to do a competency test or not. And that again, that's not something we litigated. Right. So, so I, so, so I guess, you know, where we were, where we're at is whether or not simply by knowing that there was something wrong with the will, he should have been on notice that Catton didn't fulfill this separate duty to perform a competency test. Counsel, can I ask you a question? Absolutely. Isn't the question not of a competency test, but is it whether or not Catton knew that this client had testamentary capacity to make the changes? Isn't that the question, whether there was testamentary capacity, if she had it at the time of the execution? Well, we don't argue that Catton knew that she didn't have testimony capacity. Right. I'm asking you the question. Isn't that the better question than whether or not they gave a test? They should have inquired into the testamentary capacity. Should they not? They absolutely did. And as far as we knew, they performed their duty to inquire as any attorney would. And certainly if this case ends up not being dismissed, they can argue we made the proper inquiries right to see if she had testamentary capacity. And we were reasonably convinced that she had that capacity. Okay. And so I think it kind of comes, I think it comes down to some of the precedent from this court. We argue this is more like Mitzius versus Ivlow Corp. That's 2011 Illinois at first, 101, 126. How do you think it's like Mitzius? Because in Mitzius, the problem was for the plaintiff, it was unknowable. What was unknowable to your client? Our client was assuming again, and this will go to the second part of the argument, assuming again that Alice isn't chargeable with, because she didn't have capacity about knowing that they didn't confirm she had capacity. Assuming she's not chargeable with that, our client didn't have the tools to even start performing that inquiry until he became the guardian of Alice's estate. And even then, and then that's the only way he would have been charged. And so here, look, in Mitzius, there was a scientific incapability. Here, there was a legal incapability. But in both cases, they say you need to have some inkling that the actual defendants did something wrong. And if we were arguing aiding and abetting, I absolutely agree that the other cases that they rely on a lot would apply. But here you have two separate breaches of duty, right? We're not claiming that- I'm sorry, counsel. In your participation in these improper modifications, that's what you allege, upon discovering Leonard's scheme and defendant's participation in these improper modifications. And in fact, one of your claims is that they tortiously interfered with his testamentary expectancy. Isn't that very similar to the case in which the law firm does aid and abet? How is this different? In the case of the law firm aids and abets, you're essentially charging the plaintiff, you're essentially charging the law firm with the same thing that you charge the underlying party with. Here, we're not claiming that there was some scheme on behalf where Catton knowingly, or even negligently, you know, participated to deprive our client of what was his due. Instead, what we're arguing is that they didn't fill this entirely separate duty, which was simply to verify that the person that they're changing, whose will they're changing, had the capacity to do that. Right? So you have a completely different set of facts that we need to prove in order to prevail, as opposed to Catton, where basically, it's the same set of facts, plus knowledge on the part of, again, Catton Muchin. I think this is also, you know, I think Landreth is also a great case here, and it deals with a very similar situation, where a law firm drafted a contract, and a city stopped paying on that contract. The client sued the city, and then only during litigation did the client find out that the contract was void ab initio, and then it sued the law firm. Right. And here, too, it's a little more separate. Same with Blue Waters versus Mason. This is really, I mean, aside from the fact in both Janicek and in Blue Waters, that there were other facts that probably would have triggered client knowledge, aside from just the aiding and abetting situation we're talking about. In Blue Waters, too, it was based, it was reliant on the underlying claim in a breach of fiduciary duty. We're not claiming that breach of fiduciary duty. We're just saying they didn't perform the necessary evaluation they needed to perform. Counsel, may I ask you the heading on your case? Is he solely suing as the guardian of the estate, or is he suing on his behalf as well? He's doing both. Doesn't the title only say, as limited guardian? I believe it says he's doing it as limited guardian in an individual capacity. It's got both on your heading. Yeah, I believe it does here. I'm pulling up that document right now. Okay. Do you know how old the plaintiff's mother was at the time? Plaintiff's mother, that I do not know. I know that two years prior to when she changed her will, she didn't have testimony capacity, or at least that's what we argue on the complaint. Okay, thank you. I have one more question. No problem. Is there anything in the record as to when Andre actually saw the estate plan that Catton drafted, if you're aware? I know he was aware of the effect of the estate plan when he filed for guardianship, and that's in the record. Okay, right, and he called Catton, he let them know he was the guardian, but it was unclear to me from the record whether he'd actually seen what changes were made at that point, and I don't hear you saying that you know one way or the other. It's certainly not in the complaint or in the record before the court. Counsel, let me ask you this question. When a petition for guardianship is filed, it's mandatory that the petition be accompanied by a doctor's report giving the nature of the disability. Is that right? Yes. And what did the doctor say the nature of this lady's disability was? She had dementia. Thank you. And before you run out of time, would you briefly address your second argument? That's where I wanted to go. I think there are two good reasons why we should address whether or not the subsection E of the exact same statute was waived or not waived. So I guess the first point is that we discussed this very same 451 word statute the entire time the motion to dismiss with both parties citing to it. And opposing counsel claims that simply because we didn't cite subsection E where we ultimately used other cases from a similar statute to argue that it should apply in a certain way here, that was waived. You know, given that the whole point of all of our argument was whether or not it was when a guardian becomes aware of his charges claims, I think we didn't waive this argument because this is the exact topic we're talking about. But on top of that, even if you decide we did waive this argument, I'd like to ask the court to use its discretion, which it has to consider it anyway, because honestly, you can't consider when a guardian is chargeable with knowledge on behalf of the person he represents unless you look at whether subsection E, right, which says that the special limitations can't start running against someone with a disability until a disability is cured, applies in the case where you have a guardian or not. To the extent, go ahead. You never use the word tolling before the motion to reconsider, is that correct? The word tolling was never used. And that's what subsection E is about. It's about tolling. Subsection E is about tolling, that's right. And you didn't talk about tolling before the motion to reconsider. That's true, but it's still the, well, I mean, we did talk about whether or not the statute was told when the defendant didn't have knowledge, right? But I think that's inextricably linked here because when is a guardian chargeable with the knowledge of his or her war, right? And so if you were to rule in this case that our guy was chargeable with knowledge, right, that was chargeable with knowledge that his ward had, that would contradict that, that would contradict subsection E of that statute. Okay. It's really tolling for the ward. It's not tolling for the guardian. That's what subsection E is about. And so they can't run against Alice because she's disabled. Well, yeah, subsection E, in our view, basically gets around this whole problem by saying, you know, we're just not going to have it run against any guardian ever. Okay. Let me ask you this. Did you ever, was the forfeiture discussion had at the circuit court in any way, did you ever say to the circuit court, you should consider this, even though we may have forfeited it by not raising it initially? We didn't raise forfeiture, but we also didn't brief the motion to reconsider. I see. It was just denied without briefing. Yeah. Yeah, exactly. So I didn't have a chance to argue that very point. Cause so they never argued forfeiture either. They just never filed a brief. They never filed a brief. Yeah. Yeah. It was, it was all verbal. And so I didn't have a chance to. And I don't believe there's a transcript either of the motion to reconsider it. There isn't, I didn't know I would have hired a transcript person and had, I thought it was going to be denied off the bat. I'm not faulting you. I'm just saying we don't have any record on that one way or another. Yeah. I, I didn't know I'd be needing a court reporter for that very hearing. Otherwise I'd have concluded. I hear you. Any questions, any other questions and Mr. Sheba before we turn to counsel for the appellee? I think you need to reserve what you have for from this disability. Can you hear me? Yeah. She definitely suffered from this disability. Correct. She definitely, Oh, she suffered from her disability. That is correct. All right. You're arguing we should reverse based upon the fact that the limitations period did not begin running until you learned during the deposition. That's correct. Right. That's correct. Yes. Am I not coming through? We did not know. Well, no, we did not. We knew that she was disabled. We did not know that cat and didn't even make an inquiry as to whether she was disabled. So we assumed you, or at least according to the complaint, the assumption is that they performed their regular duty as attorneys. Right. And indeed, maybe they're going to come back and say that even with a reasonable inquiry as to whether she was disabled, she would have, you know, they wouldn't have discovered that that's fine, but that needs to be argued after the motion to dismiss with some facts finding. Thank you. Anything else? If not, we'll turn to the appellate. All right. Thank you. Good afternoon. And may it please the court. It's undisputable that Andrew cats had inquiry notice on or before June 9, 2017. I'd like to just touch on this briefly since it's been the subject of some questioning by the panel, but I'd like to spend most of my time talking about the disability tolling argument, but on this point, Janusik and the cases that are cited by Janusik and an opinion that was authored by a justice Harris after the briefing was closed in this matter, the County line nurseries and landscaping versus Kenny case 2020 ill at first two zero zero six one five, all established the fundamental concept that the discovery rule limitation here commences when there's knowledge of the injury and Andre cats had knowledge of the injury because he was aware of the estate planning on or before June 9, 2017. And when you're, when you have knowledge of the wrongful cause, and he had knowledge because that's why he was moving in court to remedy that knowledge does not have to interrupt you. I'm sorry. He had knowledge of what his brother did with his mother. Did he not? The brother took her to the lawyer, right? Yes. Right. Did he have knowledge of what exactly happened with the conferences between the did he know that he, he knew that there had been a state planning that there had been a state planning. Did he know exactly what happened during those conferences? Well, he couldn't at that point, your honor, but that is not a material fact for how could it not be a material fact whether or not those lawyers had enough information to know that she had testimony capacity. Isn't that the question? I'm glad you, your honor raised this because it's fundamental to the decision of the motion. It's black letter law stretching back to Knox College in Nolan and the con versus Deutsche Bank case. But it's been memorialized in the cases that I mentioned, including genusic and the recent county line case. You don't have to know of your cause of action. You don't have to know of a specific defendant. You don't have to know all the facts that bear on the cause of action. That's why it's how could he not? How could he know anything about the lawyers what they did until he got the deposition? How could that be? He doesn't he doesn't need to your honor. That's why what would his cause of action be then? What would he say about the lawyers? He doesn't need to know his cause of action. Yeah, that's that's file a complaint without having any facts. The the doctrine is called inquiry notice. And it's called inquiry notice because at the point that the plaintiff has enough knowledge to know that something wrong happened, he's been injured and something wrong and it's something wrong. He doesn't need to have all the facts. He doesn't even need to know who all the defendants are. Also, it could have been the case where the lawyer inquired about testimony capacity and concluded Yes, she has it. We're going to go forward these major changes to our state, but he didn't know what the lawyers did. Isn't that correct? He did not know what the lawyers did exactly that. Let me ask you this question. Did he know that Mr. Harts, he actually testified this at his deposition, that he had no standard practice for determining what a client's capacity is. That's what Mr. Hart said is his deposition. He testified to that. And he testified that he had a conversation with her competence for the state where to say I have no practice of determining testamentary capacity, my clients. Now, he would know that before, correct? Andre, he would not your honor. But again, I press on the court that under Supreme Court doctrine of inquiry notice, that is not a material fact. Well, we disagree. Let me ask you this question. Let me ask you this. Would Andre have known that Mr. Hart seemed to have an affinity for the brother that brought her in because he said, I felt that Leonard Katz had a raw deal in life. He was a nice guy. And his role was to care for his mother. He was hardworking. Those are the exact words for Mr. Hearst would have been nice. I mean, he didn't know any of that went on, did he Andre? Your Honor, I appreciate that. Because of your experience in the probate court, you found some aspects of the deposition to be offensive to your sense of professional duty. And I I'm not arguing that today. I'm trying to impress on the court that the inquiry notice begins at a point earlier than when those facts were brought out in deposition. They had already been how could he possibly know what the lawyers did? On the day he filed the petition for guardianship? And I can see that he could not know all the details until he took the deposition. But correct. So what can he say in his complaint? I think the lawyers made a mistake. The inquiry notice doctrine does not require the plaintiff to have all the facts necessary to file a complaint. And on the first day that the limitation begins. That's why it's called inquiry notice, Your Honor, because didn't he inquire once he became guardian? Didn't he inquire once he became guardian and got the facts from the deposition? He did. And his limitation was running and he had time to file the suit timely, but he did not he failed to do so. But he didn't know until the deposition that he had the facts, right? Your Honor, I have conceded that point already in the discussion. I agree with your honor that he did not know all of the facts, right? So we have two years to the date of the deposition. No, the limitation commences at the point where he's on inquiry notice. That's what the case law all says that you don't need to know all the facts of your cause of action before the limitation commences. Your Honor, that's all that's black letter Supreme Court doctrine in the state. He didn't have any facts, but move on counsel. Well, I have a slightly different question. He does. I am understanding what you're saying about inquiry notice. And I'm understanding what you're saying that he was on notice as to some things. And I now understand the inquiry that you say he should have done was exactly what he did, which is pursue information and guardianship. But do you think that there could be issues of fact as to whether he knew enough as of the date he filed the guardianship petition to put him on inquiry notice? There were all sorts of things that we don't know what he knew. Did he know exactly what changes were made in the estate plan? Did he know what his mother's level of competency, how she would have appeared to the aren't there fact questions out there as to how much he knew and whether a reasonable person knowing that would be on inquiry notice? No, no, Your Honor, there are not material fact issues out there. They're not material fact issues, because the Supreme Court doctrine stretching back to Knox College is that this is inquiry notice. Once you're on knowledge of sufficient facts to know of your injury, he knew of the injury could be new money and that it has a of some sort. Then you're on a duty to inquire to gain all those additional facts to support your cause of action. That's when you don't think you have to have any notice that this particular defendant not necessarily is liable, but could be liable because you know you're wrong. But there's a good zillion possible defendants out there. Don't you have to have some reason to think this defendant might might have some liability? No, Your Honor, that's what you knew, sick and the county line nurseries case and Costello and several other cases say knowledge does not and I'm quoting knowledge does not mean knowledge of a specific defendants negligent conduct or knowledge of the existence of a cause of action. It's just you're on inquiry to start looking. Let me try to say it a different way. The Supreme Court justified this as being sort of a middle ground between a variety of doctrines. Right at the fact that the question of whether you have a cause of action is something that a person wouldn't necessarily know, and it requires an assessment by the court. Court will determine eventually someday after litigation commences, whether there's a cause of action, whether the facts support a cause of action. That's a determination that could have happened years after filing a lawsuit. That can't be when the limitation commences, Your Honor, that it has to be when you're on inquiry to start looking, excuse me. When you're on inquiry to start looking to see what your causes of action are, that's when the limitation comes. At what point in time do you urge he became under inquiry notice? On or before June 9, 2017. And the reason why we say it that way, Your Honor, is because by that point it is it is indisputable that he's on inquiry notice. He may have well had facts beforehand. We don't know exactly when he learned of the estate planning. He could have learned of it May 31st, in which case inquiry notice may have commenced. But we know that by June 9 it's indisputable, and that is more than two years prior to the filing of the lawsuit. Um, Mitzias, um, if I may comment briefly about Mitzias is dispute is distinguishable. It has a special circumstance which involves scientific knowability. The plaintiff here attempts to read into Mitzias by bolding certain, you know, the word defendant in certain passages of Mitzias to try to make it sound as though Mitzias is saying, no, you have to have knowledge of this specific defendant. But that's not a proper reading, fair reading of the case. Mitzias was trying to say that where you're on inquiry notice, but if you inquire diligently, you would not be able to discover this cause of action because scientific knowledge had not advanced to the point where you would be able to know the cause of action. Then we're going to toll the limitation further. And what Mitzias was doing was going through doctrine on discovery rule to show that the holding that they were going to reach was a unique circumstance, was consistent with prior doctrine. Mitzias was not trying to establish some new rule that you had to know of the specific defendant's knowledge. Your Honor, I would like to discuss briefly the disability issue because I want to make sure that your honors have in mind our discussion. Certainly if, as Justice Mikva pointed out, that the tolling provision does not toll as to the guardian, you would affirm here because it's clear that he's appointed as a temporary guardian on June 9, 2017. And that is more than two years before he followed the lawsuit. But we actually pointed out to the court that Andre is operating under, that there's a, he's operating under powers of attorney. To establish Alice's disability in the briefing below, the only thing that the plaintiff pointed to was his allegation in paragraph one of the complaint. The allegation was that she was in the early stages of dementia and did not have the ability to make decisions on her own. He pointed to the first paragraph of the complaint. He didn't present any other evidence. There was no doctor report with the guardianship petition. There was no doctor report in the materials in the record of this case. Counsel, I have to interrupt you for a minute. I'm sorry. I have to interrupt you. Every time a petition for guardianship is appointed guardian, plenary guardian, temporary guardian, you must have a doctor's report. It's an absolute mandate from the court. When those guardians are appointed out of personal protection for that disabled person, the doctor's report is removed from the file and put in a separate location in the clerk's office. So there's no doubt this court had a doctor's report in front of it or there would be malfeasance by the court. So that argument isn't really that strong, but continue. I understand. All I was reflecting on was the record below. I'm sorry. Everything was in the record from probate except that, and I know why. Okay. All right. Very good. Well, the fact is, though, there was affirmative matter in the record below that defeated or avoided under 2619 the allegation that there was disability. Borrowing section 2-6 of the Power of Attorney Act says that all acts of the agent within the scope of agency during any period of disability have the same effect as if the principal were not disabled. And that has been read, granted in a Rule 23 order, but that has been read to say that the agent prevents the disabled person from being deemed disabled for purposes of the limitation. What did you just say, counsel? I don't understand that. What? Powers of Attorney prevailed through the disability. He was still Power of Attorney, but now he's guardian, which is a bigger responsibility because there's court overview. Really, he's a guardian now. Yes, but my point is, while he was agent attorney, and there's evidence in the record that he was acting under his Power of Attorney, he was communicating with health care providers. He was communicating with financial advisors, attorneys, and financial institutions. He's gathering information about his ward, Alice, and her activities and Leonard's activities. He's gathering that information. Now, we've cited in a footnote the Ross versus Stolberg case. It's a Rule 23 order. We understand it's not precedential, but the reasoning of that case was very thorough and comprehensive to address what that meant in a situation where there was a limitation defense. And the court found that the fact that the agent attorney is gathering this information and seeking redress for the violation of rights meant that the person who signed the agency, the Power of Attorney, was not deemed disabled for the purposes of limitation because the agent attorney had the requisite inquiry notice. And that is the case here. The agent attorney requisite. Never heard of that case, counsel, but anyway. You brought up the Power of Attorney. While he was Power of Attorney, didn't he find out about a number of misdeeds of his brother? And he was acting, there was never any complaint about his activity as Power of Attorney. He took care of his mother's finances. He took care of her health care plan. Never a question, right? That's correct, Your Honor. And he not only complained about the people that were taking, Leonard complained numerous times about the caregivers, about he wasn't getting enough money from his mother, those kinds of things. And he, the Power of Attorney, tried to protect his mother from Leonard. Did he not? Yes, Your Honor. That's not the focus of our argument, though, Your Honor. It's not the focus of whether- This is the man that's bringing her to see the lawyers, a lawyer of his choosing. There was not a telephone conference between Mrs. and the attorneys ever. The attorney called twice and said, can I talk to your mother? And Leonard said, no, she's busy. Second time, no, she's busy. No, I understand. I understand, Your Honor. But our sole argument is inquiry notice. When did inquiry notice commence? And the inquiry notice commenced at a time before the guardian, before Andrew was appointed as guardian, when he was holding Powers of Attorney and acting under those Powers of Attorney. The Ross versus Stolberg case is in a, it's cited in a footnote. We put it in a footnote because of its Rule 23 status, Your Honor. But if you review that order, that Rule 23 order, you'll see that there's an extensive discussion of the Power of Attorney Act and the cases that- How are we treating prior Rule 23s? You are, did you want me to answer that question, Your Honor? My understanding is that- I wouldn't ask it if I didn't want your response. I'm sorry, Your Honor. They are non-precedential, Your Honor. So, Your Honor, this panel is not bound by that. I remember the days when I would be sitting here if a lawyer quoted a, cited a Rule 23, my colleague would rip up his brief in front of me. But I, but Your Honor, the court has said that where there's, there's reasoning in Rule 23 orders, the court can look at the reasoning and if it's, if it's constructive and thorough or persuasive, it can look at that reasoning in the course of reaching its decision here. And that's why we have presented the reasoning of that, of that case here in our brief. So, we always say is that 2-6 of the Power of Attorney Act is quite clear that for the, when the acts of the attorney, when the, when the agent attorney is acting under those powers, his acts are binding the principle and the principle is not disabled for those, for the purposes of those acts. Here, this agent is gathering information and he's seeking redress for the violation of the rights of the principle that he found. And under the reasoning of 2-6, that means that she is not disabled. So, the tolling provision does not operate. The tolling provision simply- Even if she's got a diagnosis of dementia, counsel? Even if she's got a diagnosis of dementia, she's not disabled. Is that what you're telling me? No, I'm not that, I'm not saying that at all, Your Honor. What I'm saying is, is at a point before she was disabled, before she had dementia, years before that, she designated Andre Katz to be her agent to protect her rights if she became disabled. And that's what happened. She became disabled. Andre acted under those powers of attorney to protect her rights, gathered information about rights violations, and he sought redress. That means that the inquiry notice that he has, which certainly bars his personal claim, his count two claim for tortious interference with testamentary expectancy. And there's no argument that the tolling agreement somehow bars that count two claim. That was completely passed on in the reply. But his inquiry notice also bars counts one and three, which he's brought in his representative capacity because his knowledge as the agent is deemed under the language of the power of attorney act section two six to be her knowledge. And she's not disabled for the purposes of limitation provision because there is, unlike the guardian statute, unlike the guardian statute, there was explicit legislative intent expressed in the power of And that's what happened here. The materials that Andre himself filed to support his temporary petition showed all the acts that he was undertaking in his role as power of attorney. And then he sought to obtain redress. And in fact, the power of attorney itself says that if a guardian is to be appointed for me, I designate the agent attorney as that guardian. And as under the probate act 11, I think it's 11 a dash six 755 ILC s 45 slash 11 a dash six. Unless it's the court finds it's not in the best interest of the word, the court is supposed to honor that designation and the power of attorney. So the the inquiry notice that the agent attorney has here is effective to avoid the application of the tolling statute, the tolling statute doesn't apply. Because the very agent who had the inquiry notice the one who then got himself appointed as the guardian had the inquiry notice more than two years before he filed suit, and the claim is barred by the statute of limitation. All right, Council, you're out of time, unless there are more questions from my colleagues. Thank you. Mr. Shiba, you still have eight minutes for rebuttal. Wonderful. Thank you. I think really, we've got two issues here. First is whether or not a power of attorney by itself makes it impossible for a plaintiff to take advantage of the disability tolling portion of the statute of limitations statute here. And second, whether you need knowledge of a specific defendants wrongdoing at all for the statute of limitations to start running. I'd like to start and if it's okay with the court, I'd like to discuss Ross v. Stolberg a little bit too. According to opposing counsel, the fact that there was a power of attorney means that under any circumstances, she's chargeable with full knowledge regardless of her disability. And I don't think that's consistent with the statute, where it says all acts of the agent within the scope of agency during the period of disability are treated as if there was no disability. And indeed, if our client had signed a contract on behalf of his mother, she couldn't then take advantage of her disability. And this court in the unpublished case, Ross v. Stolberg actually dealt with that very argument. And it said, maybe that inaction isn't enough to trigger the same limitation. But in this case, there were acts of Sherwin's attorney and both acquiring knowledge that Sherwin's rights might have been violated and pursuing readjust of those rights that triggered the running of the statute of limitations. And here, they've pointed to no act. And indeed, it's tough at the pleading stage for them to point to an act that we took, that would have had the power of attorney statute apply to our client. If you do it under his greed, signing any power of attorney ever, long as it's still in force, would mean that you can be tied to anything once you're disabled, in terms of the statute of limitations. I'd like to bring the court now back to... Just one question. You do agree, Mr. Shiba, that the tolling argument does not do anything for you on count two. Is that correct? I do. Yes. Yeah. Andre wasn't disabled. He doesn't get to benefit from the tolling. Absolutely. But I'd like to go back to something that deals with all three claims, which is whether or not you need any information that a specific defendant did any wrongdoing. I think some of the language by this court could lead in two different directions. I'd like to make two points, one just based on logic and the other on the facts of these cases. The first is that if you take opposing counsel's position, that knowledge of any wrongdoing, period, means that it runs against all of the defendants, regardless of any other facts you may have, you could go two years without having reasonably suspecting Catton, without having any basis. And opposing counsel didn't even try to claim that our client was capable of knowing Catton had done anything. And indeed, he didn't have the guardian powers until the ninth, but he certainly can't be expected to this very same day, have all of those facts. Right. And so I think if you interpret the law the way opposing counsel wants to, the two years could run before you have any reason to suspect that a second defendant might have wronged you. But I think second, what we need to do is we need to reconcile Mitzias, where there was an impossibility, there it was scientific, but in our case, it was legal, right? That our client could discover the wrongdoing on behalf of the other party. And Janicek and Bluewater, where the court said, look, you had knowledge of wrongdoing, you can't come back and say these fiduciary duty or aiding and abetting claims that basically the same thing didn't start running at the same time. I would advocate that the court reconcile it by saying that if the claims are aiding or abetting or something where the facts are exactly the same, and both Janicek and Bluewater talk about this, where it's the same allegations, just adding on the aiding and abetting stuff, that sure, the statute of that we're not claiming any sort of scheme, there was no way for us to know that the defendants made no attempt to see if our client didn't have testamentary capacity. So while Mitzias did talk about the technical impossibility, I can quote for that case. And it says, where a plaintiff is aware that her injury might have been wrongfully caused by one source, but could not, as of yet, have been aware of another potential source at that time. That's the reason why the court found that the statute didn't start running. I'm sorry, I'm going to stop you again. I didn't understand it in your opening, and I still don't understand it. What is the impossibility in this case that you think is equivalent to Mitzias? In this case, we're assuming that Alice is in charge of old knowledge of her own disability and their failure to assess her disability, right? So the only time that we can find the facts, because facts in Alice's head aren't accessible, the only time we can become aware is by conducting discovery. So the impossibility is caused by Alice's dementia, is what you're saying. Otherwise, he could just call his mother and say, hey, what happened at the lawyer's office, but he can't because she's got dementia. Exactly. Yes, exactly. Right. And I mean, obviously, even knowing, you know, to ask that, right, all the facts are in Alice's head. And I mean, that's also another reason to argue against waiver here, just from a prudential grounds, is that, you know, we have a provision that deals with this very situation. And I have one last question, the same question I asked your opposing counsel. If we were to reverse, they would still, would they not have this defense available to them, but it would be, they'd have to raise it and prove it factually. They could still, okay. Absolutely. You're just saying it should not have been dismissed on this basis. Yes, exactly. There are factual issues. Absolutely. Yes. And on the record we have before us, we have none because there was no inquiry done into what our client knew, the physical person, not who is representing Alice. There's no inquiry into what Andre knew. And, you know, maybe they could argue that by before the 22nd, when he, you know, when, when we did sue, right, we sued two years after the 22nd, they could argue at that point, he should have had the facts that led him to suspect that Catton had done wrongdoing. Right. Maybe they can argue that we should have deposed Catton first. Fine. But they haven't made that argument or presented any facts that that's what should have happened. And, and, and, and again, we're not, you know, and again, this is the totally separate situation where Catton didn't even perform its basic attorney duties. But honestly, I would have expected a law firm that's drafting wills as a business to ensure that the clients are capable of doing that. Does anyone have any questions? No, I'm done with questions. Finish. You can finish. If you still have more to say, though, you're technically out of time, but I'll let you wrap up. I guess my wrap up sentence will be that this court should avoid a situation where one, a power of attorney means that you cannot ever take advantage of the disability tolling and to that you don't need any facts that might suggest a defendant committed a wrongdoing. Because again, otherwise you might not get those facts until two years have passed, at which point you can't sit. And you certainly can't bring a suit beforehand, you know, without the facts to allege that. Anyone? Does anyone else have any more questions? Oh, thank you. Thank you both. Thank you both. This is very, very interesting issue. And thank you both for very excellent briefs and argument on this. And we will take this matter under advisement.